DAVID T. McGAVOCK & others *vs.* LOUISA A. PUGSLEY & others.

October Term, 1873.

WILL—CONSTRUCTION—POWER OF DISPOSITION.—The testator gave, by his will, the residue of his estate to his wife, "to be used and enjoyed by her during her natural life, hereby authorizing her to sell or dispose of the same in any way she may deem necessary for the convenience and support of herself and our two daughters, and if at the death of my said wife any part or portion of my property or effects shall remain, the same to be equally divided between our said daughters or their representatives." *Held*, that the limitation over was good, and that the devisees in remainder were entitled to any property of the estate remaining in kind, and such part of the proceeds of sale of any of said property as they may be able to trace and show was not used for the "convenience and support" of the tenant for life and the daughters.

*E. H. East*, for complainants.
*John Trimble*, for defendants.

THE CHANCELLOR :—On the 26th of April, 1830, Charles

Pugsley made his last will and testament, by which, after providing for the payment of his debts, he disposes of his property as follows: " To my beloved wife, Eliza Pugsley, I give and bequeath all the remnant of my estate of what kind soever, real or personal, to be used and enjoyed by her during her natural life, hereby authorizing her to sell or dispose of the same in any way she may deem necessary for the convenience and support of herself and our two daughters, Caroline E. Pugsley and Louisa A. Pugsley, and if at the death of my said wife any part or portion of my property or effects shall remain, the same to be equally divided between our said daughters or their representatives." The testator by his will then appoints his wife, Eliza Pugsley, sole executrix, " without requiring of her to enter into bond for the same."

The testator died early in the year 1832, and, at the April sessions of that year of the County Court of Davidson county, the will was proved and recorded, and Eliza Pugsley was appointed and qualified as executrix. She seems never to have returned an inventory of the effects of the estate, nor to have ever made any settlement as executrix. She took possession of the property left by the testator, and used and disposed of it from time to time as absolute owner. She died in the year 1863, having first made her last will and testament and thereby devised her estate, and undertook to devise the property which came to her from her husband, to her daughter Louisa A., who had continued to live with her, never having married, and appointed James Woods executor of her said will. Her other daughter, Caroline E., intermarried with David T. McGavock, and died leaving her husband and children and grandchildren surviving.

On the 27th of April, 1864, the said David T. McGavock and his children and grandchildren, by his wife, the said Caroline, filed their original bill in this cause against Louisa A. Pugsley and James Woods, setting out the foregoing facts, and alleging that on the 1st day of November, 1830, and after the execution of his will as aforesaid, the said Charles

Pugsley purchased, from one John Dwyer, for the consideration of $8,000, a house and lot on Summer street in Nashville, and took a deed for the same; that James Woods had refused to qualify as executor of the will of the said Eliza, and that no one had, up to that time, been procured to accept said office, or become administrator *de bonis non* of the estate of said Charles Pugsley. The bill insisted that the house and lot on Summer street, having been bought after the will of Charles Pugsley was made, did not pass under said will, but descended to his heirs. The prayer of the bill is that the court make a decree construing said will, declaring the interest of all parties thereunder, and settling the equities and rights of said parties under it, or as heirs at law either of the said Charles or the said Eliza, and decree the partition of the realty and distribution of the personalty of either of said estates, together with all necessary accounts thereof. There was also a prayer that the court would, if necessary, appoint an administrator *de bonis non*, with the will annexed of Charles Pugsley's estate, and an adminstrator *cum testamento* of the estate of Eliza Pugsley.

On the 30th of October, 1865, D. T. McGavock filed his petition to bring before the court the fact that he had qualified as administrator of the estate of his deceased wife.

On the 29th of April, 1868, an amended bill was filed by the same parties, except that James Whitworth as administrator of David T. McGavock took the place of the latter, who had in the meantime died. This amended bill, after setting out the allegations of the original bill in detail, states that since the filing of said original bill, the complainants had discovered that on the 28th of April, 1831, the said Charles Pugsley had, by deed of that date duly proved and registered, conveyed the house and lot on Summer street to Robert Woods and Daniel Graham as trustees, in trust for the said Charles Pugsley and Eliza Pugsley, his wife, for life, and for the life of the survivor, and upon the death of both of said beneficiaries, to convey the premises in fee to such children of the said Charles and Eliza as they may

then have living, or to the descendants of any child or children of theirs, such descendants taking what would have been the parent's proportion. The bill further alleged that Robert Woods, one of the trustees, had died, leaving the other trustee surviving, upon whom the trust had devolved. The surviving trustee was made a defendant, and the prayer of the bill was that the trust be executed, and the said real estate sold for a division between those entitled.

Louisa A. Pugsley, in her answer, admits the facts to be substantially as hereinbefore set forth, but says she is informed and believes that her said father in his life-time became insolvent, and that the said house and lot was not paid for by him, but by her mother out of her separate estate, and that she from that time held and claimed the same adversely to all the world. That this payment was made by her after the death of her husband. She insists that her mother thereby acquired a valid title to said property, which she could and did convey by will. And at any rate that she was entitled to be reimbursed for such payment out of her husband's estate, etc.

The object of the original bill was to have a construction of the will of Charles Pugsley, and a declaration of the rights of the parties under it, and to have a decree in favor of the children and grandchildren of Caroline E. McGavock, as heirs of Charles Pugsley in right of their mother, for the one-half of the house and lot on Summer street, upon the ground that the property did not pass under the will because purchased after it was executed, and that, consequently, the said Charles Pugsley had died intestate as to this property. The amended bill claimed this realty for the same parties as entitled in remainder under the deed to Woods and Graham. It is clear, and it is conceded, that, upon the facts set forth in the original bill, the realty in question would have descended to the heirs of Charles Pugsley, and would not have passed by his will. But it is equally clear, and is also conceded, that this realty passed under the trust deed to Woods and Graham, and that, upon the death

of Mrs. Pugsley, the trust enured to the benefit of Louisa
A. Pugsley as to one moiety, and the children and grand-
children of Caroline E. McGavock as to the other moiety,
unless this result is affected by the fact set up in the answer
that the purchase-money of the land was paid by Eliza Pugs-
ley out of her separate estate.

The facts as developed by the record are that the house
and lot were conveyed to Charles Pugsley by John Dwyer,
by deed executed on the first day of November, 1830, recit-
ing the consideration to be $8,000 " paid by the said Charles
Pugsley." To rebut the presumption arising from this deed
and its recitals, the defendant produces a deed executed by
Charles Pugsley, on the said 1st day of November, 1830,
also duly proved and registered, conveying the said house
and lot in mortgage to one John B. Carter, to secure three
notes of the said Pugsley to the said Carter of the same
date, at 14, 26, and 38 months, respectively, for $1,590,
$1,680 and $1,770. This mortgage, and these notes were
in the possession of Eliza Pugsley at her death, and are now
produced and filed by the defendant, and the court is asked
to infer, from the fact that they were in the custody of the
said Eliza, that they were paid by her. No other evidence
is introduced to sustain the fact sought to be inferred. It
is obvious, all question as to the sufficiency of the pleadings
to justify the defence out of the way, that the burden of
proof is on the defendant, because she seeks to avoid the
written instrument, and the facts as admitted by her which
would otherwise sustain the allegations of the bill. The
burden of proof is not only upon her, but the defence itself
is of that character which requires, according to all the deci-
sions, the clearest and most conclusive evidence. There is
nothing to show that so much of the original consideration
of $8,000 as is not supposed to be embraced in the Carter
notes, was paid by Eliza Pugsley. It is conceded that the
purchase-money to that extent was, so far as the record
shows, paid by Charles Pugsley. The claim of the defend-
ant for her mother is reduced to that part of the purchase-

money which she supposes is covered by the Carter notes, the argument being that, inasmuch as these notes were executed on the same day of the original purchase, and secured by the mortgage upon the same property, they represent that part of the purchase-money, say about $4,500, borrowed from Carter. This point being conceded as perhaps a fair inference from the facts, it is next insisted that these notes were paid by Eliza Pugsley out of her own means because found in her possession. It is obvious, however, that mere possession cannot be relied on to show a payment out of her own means; for, if the notes were not paid by Charles Pugsley in his life-time, it was her duty to pay them as executrix, and the whole of the testator's estate is charged with the payment of debts, and that he had sufficient property to pay these notes is shown by the proof. But the testimony adduced by the defendant tends strongly, and in the absence of all opposing testimony, conclusively to show that these notes were paid by Charles Pugsley in his life-time. On the mortgage to Carter, produced by the defendant, is an acknowledgment, signed by Carter under date of the 28th of July, 1831, of the payment of the notes, and a relinquishment of the mortgage.

Upon this branch of the case I am clearly of opinion that the defendant has wholly failed to sustain the defense set up in her answer, and that the house and lot on Summer street was the property of Charles Pugsley, and passed, under the trust deed, to Woods & Graham, and that the complainants, the children and grandchildren of Catherine McGavock were entitled, upon the death of Mrs. Pugsley, to the undivided half of said realty, and consequently to the relief prayed in that regard.

The only question of any difficulty arises upon the construction of the will of Charles Pugsley. It is insisted upon behalf of the defendant that her mother took an absolute interest in the property devised to her under the residuary clause already quoted. That clause authorized Eliza Pugsley " to sell or dispose of " said property, " in any way she

may deem necessary for the convenience and support of herself" and daughters, with the proviso, however, that if at her death any portion of the property should remain, the same should be equally divided between said daughters " or their representatives."

The law governing such devises may be considered as well settled in this state, and is thus condensed in the headnote to the case of *Smith, T.,* v. *Bell,* in my edition of Martin & Yerger's Reports, p. 302 : " An unlimited power of disposition given by will carries the absolute interest in the property. *Secus,* if power dependent upon contingency, or, it may be added, definitely qualified." The first part of the rule is illustrated by the principal case, and quite a number of cases cited in the head-note. The latter part of the rule is illustrated by *Deaderick* v. *Armour,* 10 Hum. 588, 594 ; *Pillow* v. *Rye,* 1 Swan, 185 ; and *Downing* v. *Johnson,* 5 Cold. 229. In the first of these three last cases, the conveyance was by deed to a trustee in trust for a married woman, with the express provision that the married woman was to have the possession and control of the property, "and by and with the consent of (the trustee), may sell, use and dispose of any or all of the aforesaid property, or her interest therein, *as she may think fit.*" The court after citing the case of *Smith, T.,* v. *Bell,* and others to the same effect, say : " These cases fully sustain the position, and it may be considered a settled rule, that where an estate is given to a person generally, with an unrestricted power of disposition, it carries a fee. So a gift for life with unlimited and unrestricted power of disposition carries the fee. * * But, the court adds, the converse of this proposition is equally true. Where an estate is given to a person generally or for life, with a limited and special power, only, of disposition or appointment, and in case of failure thereof then remainder over, there is nothing inconsistent or repugnant in the limitation. The estate expressed is that which passes to the first taker ; it is not enlarged by implication or construction, and on failure to execute the power or make

the appointment in the special manner stated in the words of limitation which confer it, the estate or interest in remainder will take effect." And the court proceeds to cite and comment on the cases on the point.

The case of *Pillow* v. *Rye*, 1 Swan, 185, was that of a will, in which the testator gave property to his daughter for life, with this express clause: "My object is to make a provision for her and not to postpone her interests to those of my remote descendants; and if, for any cause, it becomes necessary for her ease and comfort to use any portion of the principal of the property and money herein set apart for her, it is my wish that it should be done." The will then provided that "the property and money, *or the part remaining* after providing for her in the manner herein declared, shall go to her children or their descendants," etc.

"There can be no question," says Judge McKinney in delivering the opinion of the court, "that, although the interest of the first taker be in terms limited to an estate for life, yet if there be superadded words conferring an unlimited power of disposition, it will be considered as equivalent to an absolute gift of the property, because such unlimited power of disposition is incompatible with the limitation over in remainder. But, it is equally clear, that where the power of disposal is limited, and made to depend upon a contingency, the first taker has no power of disposition till the contingency happens. In such case, the property can only be disposed of in execution of the power expressly conferred; and it need scarcely be added, that should the contingency never happen, the power cannot be executed." And the court held that the limitation over was good.

In that case the power of disposition was contingent upon its becoming "necessary for her ease and comfort." In the the case before us the authority is "for the convenience and support of herself and our two daughters." The words are varied but the sense is one. The provisions of the two wills cannot be distinguished in principle. The case of *Downing* v. *Johnson*, 5 Cold. 229, is still stronger. There

the court held that the terms of the will gave to the tenant for life, the testator's widow, a right to consume the *corpus* of the entire estate, except the land, " if her support and maintenance, *in her discretion*, require it," and yet that the devise over of the " balance " of property on hand at her death was good.

There is, in fact, no conflict of authority in this state upon these principles, although a case or two may be found upon both branches of the rule, where the correctness of the application of the acknowledged principle to the facts of the particular case may well be doubted.

I am of opinion, therefore, that the power of disposition given to Mrs. Pugsley was not unlimited, and that the limitation over was good. The complainants do not seek in their bills to impeach the sales made by her, nor, perhaps, could this be done except where there had been fraud and collusion; for the discretion of judging of the contingency of disposition, as well as the power of disposition, is conferred upon her by the will. All, therefore, that the complainants, as remainder-men, can claim will be any property of the estate of Charles Pugsley remaining in kind, and such part of the proceeds of sale of any of said property as they may be able to trace, and to show was not used for the " convenience and support " of the tenant for life and her daughters. Beyond this no account on this part of the case seems to be necessary. Neither of the bills asks that an account of the administration of the estate of Charles Pugsley should be taken. Nor do I think, after such a great lapse of time, that such an account could be demanded without a satisfactory explanation of the delay in seeking it. Nor is such an account at all necessary in view of the fact that Mrs. Pugsley was entitled to all the rents and profits, and to so much of the principal as was necessary for the convenience and support of herself and daughters. The testator did not intend that she should be held to a rigid accountability, and her children have acquiesced in her proceedings. They, and of course those who represent them,

must be content with such property as they can show belonged to the testator, or was derived from the sale of his property and remained on hand at the death of the tenant for life.

The defendant, Louisa A. Pugsley, is entitled, under her mother's will, to all property or money not shown to be a part of her father's estate as aforesaid. And the decree will distinctly declare this right, and that the burden of proof is on the complainants to show affirmatively the property or money to which they are entitled under the above ruling. She will also, of course, take the one-half of whatever is proved to belong to her father's estate as aforesaid.

I have sought in vain through the record to ascertain whether Mrs. Pugsley or Mrs. McGavock died first. If the latter, then her interest in her father's estate would go to her children and grandchildren under his will. If the former, then the personalty would go to the husband. If the whole of the property, as has been suggested in argument is either in the possession of the defendant or the custody of the court, the point is perhaps not material. The parties may have such representatives appointed as they see proper.

NOTE.—This decision was, upon appeal, affirmed.